J. Robert Lynch, J.
The petitioners are several downtown Syracuse property owners who have, through the same firm of attorneys, brought on for judicial review their real property tax assessments for the year 1960. Shortly after the actions were commenced, all of the petitioners, pursuant to the provisions of section 716 of the Real Property Tax Law, served a demand on the respondent Commissioner of Assessments of the city that he admit for purposes of the proceedings that he assessed other real property in the city at 60% of full value. A reading of the statute makes the petitioners ’ purpose obvious — if the respondent admitted the 60% figure, the petitioners would be spared proving inequality on the trial and could concentrate solely on overvaluation. If the respondent denied the 60% figure and the petitioners were able to prove it, or less than it, to the court’s satisfaction, the respondent could be held liable for the petitioners’ expenses of proof in attorney and expert fees.
The respondent, in its reply to the demand, declined to either admit or deny it. Upon application by the petitioners the court held the respondent’s reply to constitute an admission of the 60% figure in accordance with the statute since it was not an express denial. The court then referred all of the reviews to the Hon. Lee L. Ottaway, Official Referee, to hear and report, determining that they should be tried in the order in which notes of issue were filed. This made the Putnam Theatrical Corporation case first and the Ed Guth Realty, Inc., second in the order of trial.
The respondent appealed the court’s order, construing his reply as an admission, to the Appellate Division, Fourth Department, which modified this court by granting the respondent 10 days in which to serve a proper answer to the petitioners’ demand. Accordingly, the respondent denied in all the cases that he assessed other property in Syracuse at 60% of full value.
With the Putnam Theatrical Corporation case coming on for trial and proof of inequality being made necessary by the respondent’s denial of the demand, the parties then resorted to the provisions of section 720 of the Real Property Tax Law. By the terms of that statute the Official Referee selected 12 parcels to be appraised on the issue of inequality from lists of parcels submitted by the parties. The Official Referee also limited each side to three expert witnesses. The trial of the first case was scheduled to commence on January 3, 1961, at 1:30 in the afternoon.
*319 The attorneys for the petitioners now say that at that time they made two discoveries in preparing the Putnam Theatrical Corporation case for trial:
1. That real property sales in the city for the year in question totalled $32,458,644. These parcels sold were assessed at $12,-555,240. The percentage of assessment to full value is thus shown to be 38.68%.
2. That the specimen parcels selected by the Official Referee were appraised by petitioners’ experts and the assessment was 40.4% of full value so found. w
This marshalling of proof was rendered academic by the next step taken by the respondent. After delaying the trial of these cases for six months by appealing this court’s order construing his reply as an admission; after receiving from the Appellate Division the right to enter a denial; after making his denial; and after the first case was prepared on the basis of the denial, he then made application, on show cause order, for permission to withdraw his denial and admit the 60% figure demanded in all the cases. The show cause order was returned on January 3, 1961, just three and a half hours before trial of the Putnam Theatrical Corporation case was scheduled to start.
On return of the show cause order before Mr. Justice Del Vecchio, the respondent was permitted to admit the demand in all cases and the admission was so served. A condition was granted, though, which held the respondent liable for reasonable attorney and expert fees incurred up to the time of the service of the admission.
Despite this last-minute change of pace, the trial of the Putnam Theatrical Corporation case proceeded on schedule, although confined by virtue of the admission solely to overvaluation. The trial consumed four and a half weeks of time and covered some 1,800 pages of testimony. The Official Referee reserved decision, expressly intending to decide the first case before proceeding with the others. Minutes were filed with him; he worked on the case to the extent hereinafter set forth; but before any report was filed, he died of a heart attack. All of the cases have thus reverted back to this court for disposition.
Prior to commencing trial of the reviews it is necessary to consider fonr separate motions:
motion no. 1. The respondent’s motion to vacate a new demand made by the petitioner Ed Gfuth Realty, Inc., for him to admit that other real property in the city is assessed at 55% of full value.
*320 motion no. 2. The petitioner Putnam Theatrical Corporation’s motion to consider certain findings made by the Official Referee as a report and for confirmation of the same, or in the alternative for the court to determine the review on the minutes andexhibits taken before the Official Referee.
motion no. 3. The petitioner Putnam Theatrical Corporation’s motion to consider certain findings made by the Official Referee as a report on the reasonable attorney and expert fees and for confirmation of the same, or in the alternative for the court to determine on the papers reasonable attorney and expert fees.
motion no. 4. The respondent’s motion to consolidate the trial of the 1960 assessments with the 1961 assessments in each separate case.

Motion No. 1.

The petitioner Ed Guth Realty, Inc., had previously demanded with the other petitioners that the respondent admit the 60% figure. This is now admitted. The petitioner Ed Guth Realty, Inc., has now, since the admission and acting for itself alone, served a demand asking respondent to admit that other real property in the city is assessed at 55% of full value. The respondent moves to vacate this latter demand.
Section 716 of the Real Property Tax Law says: “At any time after answer has been served or has been deemed made and not later than twenty days before the trial, the petitioner may serve upon the respondent a demand for admission ”. The petitioner argues that it is thus entitled to serve as many successive demands as it deems necessary as long as they are served between the time of service of the answer and 20 days before the trial. The respondent argues that the express wording of the statute limits the petitioner to “ a demand ’ ’ and that to allow more would subject the taxing unit to harassment.
Clearly a petitioner seeking judicial review of his assessment must feel aggrieved, and for some reason. It is a fair presumption that prior to instituting action, investigation has coalesced his belief to a point where he feels proof is capable of being offered to sustain it. One item of proof, at least in this type of case, and an expensive one, is that other property enjoys being assessed at a certain percentage of full value while his is assessed at a higher percentage.
Section 716 of the Real Property Tax Law grants to the petitioner an opportunity to eliminate this tedious and expensive item of proof. It gives him the right to demand the taxing unit to admit that it is assessing other property at a certain percentage of true value. The percentage figure stated in the demand *321 is within the discretion of the petitioner. He may make it any figure he wishes up to the statutory limit of 95%. Is it too much to expect that this figure when given shall be based on some firm conviction that it represents the actual fact? Or should a petitioner be allowed to pick a figure at random and adjust it by successive demands to accord with the realities of his case as they are thereafter discovered? Should a petitioner be allowed to give one demand and then, when the specimen parcels are chosen by the court for the trial, have them appraised and adjust his demand, not accordingly, but just somewhat closer? Should a petitioner be permitted to elect a figure and use it only when it is denied, but, if it is admitted, be allowed to try again with a smaller one?
There is no doubt in the court’s mind that were a 55% demand allowed in the Ed Guth Realty, Inc., ease and admitted, the next case would see a 50% demand, and so on down, until by a process of attrition the city would reach a point of denial, and thus subject itself to possible liability for further attorney and expert fees.
We believe it the clear intent of the statute that the petitioner shall elect a figure which its investigation reveals would do equity to it if admitted and which if denied, but then proved true, would enable it to recoup the expenses of such proof. The petitioner has the advantage of determining the figure demanded; he must suffer the disadvantage of being bound by it.
No clue to legislative intent is found in the history of section 716 of the Real Property Tax Law. No similar problem has been presented under the demand-for-admission statute, section 322 of the Civil Practice Act. Nor has any case on the subject come to our attention. Yet, assuming section 716 of the Real Property Tax Law to be susceptible of two constructions, the one favored by the petitioner and the other one favored by the respondent — it is the duty of the court to adopt the construction which will avoid the objectionable results suggested above. (Kauffman & Sons Saddlery Co. v. Miller, 298 N, Y. 38.)
The analogy of section 322 of the Civil Practice Act to section 716 of the Real Property Tax Law requires us to comment upon some of the authorities found under the former section vis-a-vis their applicability to the latter. Under section 322, it has been held that a preliminary motion provides no authority: to determine the propriety of a demand (Katon v. Maskord Management Corp., 73 N. Y. S. 2d 174); to vacate or modify a demand in advance of trial (Meyers v. Meyers, 268 App. Div. 1037, Banca Nazionale Di Credito v. Equitable Trust Co., 221 App. Div. 555); to determine the reasonableness of a demand *322 (Langan v. First Trust & Deposit Co., 270 App. Div. 700, affd. 296 N. Y. 1014); or to determine the reasonableness or quality of an answer to a demand (Clark v. Curtis, 83 N. Y. S. 2d 340). However it is permissible under certain circumstances to assert by preliminary motion that the provisions of the statute are inapplicable to the particular case (Rusnak v. Doby, 267 App. Div. 122; Colonial Knitting Mills v. Hosiery Mfrs. Corp., 120 Misc. 558). (For a more extended discussion see Tripp, Guide to Motion Practice [rev. ed., 1949], p. 147. The 1949-1955 cumulative supplement to this edition, at page 117, calls attention to the fact that “ In the analysis of the statute contained in the Seventh Annual Report of the Judicial Council (1941), however, it is stated at pages 314^315 that the procedure is to be limited to actions and that special proceedings are excluded ”.)
We are here determining not the reasonableness or the propriety of a demand made under the authority of the statute but rather that the statute contains no authority for a second demand once a first one has been made and a proper reply given.
The respondent’s motion to vacate the demand of the petitioner Ed Guth Realty, Inc., is hereby granted.

Motion No. 2.

After the death of Mr. Justice Ottaway, the Official Referee, his papers on the Putnam Theatrical Corporation case were empounded by the agreement of the parties, made available to their inspection and then turned over to the court. The papers indicate that the Official Referee considered the matter, hand-wrote a report on a yellow pad, and directed his secretary to type an original and three copies. At this point he died. The original and three copies were typed but never signed or filed. The report, if we may call it that, found a decrease in the Putnam Theatrical Corporation assessment from $1,600,000 to $1,100,000.
The petitioner moves now to have the Official Referee’s writing be considered a report and that it be confirmed or in the alternative that this court decide the case on the minutes and exhibits. The respondent resists this petition and seeks to have the case tried de novo.
' It is useless to speculate whether Mr. Justice Ottaway’s writings constitute a report under the statute or decisions because there is nothing to indicate that this was his final say on the subject. This may well have been the first of many drafts. Even if he had signed the original and copies, until he filed the report with the court or the attorneys, he could have changed his mind and started over again.
*323 Section 470 of the Civil Practice Act states in part that a Referee’s report “ must be filed with the clerk or delivered to the attorney for one of the parties Granted that this section read as a whole may not be applicable to the type of reference here involved, still, we believe the part quoted indicates the Legislature’s intention when a report should be considered final. Any other course would be a dangerous precedent and would subject any deceased Judge’s intrachamber notes to a word-by-word and paper-by-paper scrutiny in the hope of mining some valuable ore.
We believe the case relied upon by the petitioner (Metropolitan Life Ins. Co. v. Union Trust Co., 294 N. Y. 254) is inapplicable here. There judgment was entered after the death of an Official Referee appointed to hear, try and determine. Prior to his death however the Official Referee had filed in the County Clerk’s office a “memorandum” ordering judgment dismissing the complaint. The Court of Appeals affirmed the judgment so entered holding that the ‘ ‘ memorandum ’ ’ strictly conformed with the statutory requirements for a Referee’s decision in that it contained a detailed statement of the facts which the Referee deemed necessary to his decision.
We believe the procedure to be followed in the instant case is controlled by People ex rel. Lawrence Investing Co. v. Bowers (267 App. Div. 839, motion for leave to appeal dsmd. 293 N. Y. 660). There the Referee’s report did not contain a statement of the essential facts and the Referee had died. The matter was “ remitted to the Special Term for disposition de novo or, within the discretion of the court and upon appropriate stipulation of the parties, on the existing minutes and exhibits ’ ’. We construe that to mean that where, as in the instant case, there is no stipulation of the parties a hearing de novo is mandatory.
The motion of the petitioner Putnam Theatrical Corporation is, therefore, denied and the matter is set down for a hearing de novo. Since this is the first of the notes of issue filed in all of these proceedings, it will again be the first to be tried, as set forth in our prior order.

Motion No. 3.

After the trial of the Putnam Theatrical Corporation case had concluded before the Official Referee, the petitioner made application for an order setting his reasonable attorney and expert fees. The application was made by filing an affidavit of services with the Official Referee who had been empowered by the order of Mr. Justice Del Yeochio to hear and report on *324 this matter. On the record made of the proceedings, the respondent claimed the right to be confronted by and cross-examine witnesses on the subject of the fees. After considerable recorded discussion on the procedure to be followed, the Official Eeferee directed the respondent to submit an answering affidavit, saying ‘ ‘ I think I have to have that before I can determine what is to be done in the way of examination and cross examination ”. The respondent filed his answering affidavit prior to the Eeferee’s death.
Among the papers of the Official Eeferee found after his death were notes that he had written concerning the fee application. In the main, they were a resume of the petitioner’s claim for attorney and expert fees and disbursements in a total of $55,-672.84. On the fact of this resume, Mr. Justice Ottaway had written these figures:
20,000
5.000
9.000
9.000
43,000
3,200
46,200
From this cryptic arithmetic, the petitioner would have us conclude that the Official Eeferee made a finding of $20,000 for attorney’s fees, $5,000 for an engineer’s fees, $9,000 each for two appraisers’ fees and $3,200 of disbursements for a total of $46,200. The petitioner indulges in this presumption because the figures bear a proportional relationship to those demanded in each category in the affidavit of services. But a presumption it is and a naked one. It can no more be considered a final report than could the Official Eeferee’s writings in Motion No. 2 and for the same reasons.
The alternative question is thus presented. May this court now decide the question of the fees on the affidavits submitted? (The petitioner has now submitted a reply affidavit which was not before the Official Eeferee.) Or must this court, according to the respondent, hold a hearing at which the petitioner must present witnesses bearing out its claim for the fees and subject them to the cross-examination of the respondent? The answer we believe is not precisely either position but lies in the gray area between.
Section 716 of the Beal Property Tax Law says the petitioner ‘ ‘ may apply to the court at or immediately following the trial *325 for an order requiring the respondent to pay him the reasonable expenses incurred ”. An application for an order is a motion (Civ. Prac. Act, § 113) and, with respect to the necessity for taking testimony here, this matter is no different than the garden-variety motion on notice. ‘ ‘ Where the facts upon the motion are not unusual or complicated, the court shall decide the motion upon the affidavits [citing case]. It is not the practice of the court to hear oral testimony at all [citing case]. If the court is in doubt upon the moving papers and those submitted in opposition as to the merits, it is at liberty to allow or require additional affidavits to be furnished [citing case]; but if the moving party is allowed to file additional affidavits in support of the moving affidavits, the adverse party should be allowed to reply thereto [citing case]. The court may, however, in unusual and exceptional cases, direct a referee to determine and report upon a question of fact [citing statute]. * * *
It has been repeatedly held that orders of reference upon the disposition of motions are not encouraged, should rarely be made and should be resorted to only in exceptional cases where the interests of justice require the unraveling of complicated facts which cannot be determined upon hopelessly conflicting affidavits [citing cases]. Litigants are entitled to have ordinary matters, involving no unusual issues, determined by the court without the expense and delay involved in a reference.” (1 Carmody, New York Practice [2d ed.], § 375, pp. 537-538.)
In short, the taking of testimony on a motion is not a prerogative of a party for use in the presentation of his position, but is a prerogative of the court as an aid in making its decision. While the matter at hand is seriously contested, it is not unusual, exceptional or complicated. The court has examined the affidavits submitted and sees no issues presented therein which necessitate the taking of testimony.
Accordingly, the motion of the petitioner Putnam Theatrical Corporation to construe the Official Referee’s writings as a report of attorney and expert fees is denied and its motion for alternative relief is granted in that this court shall determine said fees and shall do so in a supplementary memorandum.

MotionNo. 4.

The disposition of the reviews of all of these 1960 assessments have been delayed to a point where petitioners have now filed for review of the 1961 assessments. When these latter petitions first came on, motion was made before this court to have the trials of them consolidated in each particular instance with those of the 1960 assessments. This court referred the matter *326 of consolidation to the Official Referee for his decision. The Official Referee denied the motion.
In his affidavit answering Motion No. 1 herein, the respondent renewed his request to this court that the trials of the 1960 and 1961 assessments he consolidated. The court shall consider this request as if it were a cross motion.
The court in Motion No. 1 has determined that the petitioners are in effect committed to their admitted demands of the 60% figure for the 1960 assessments. No demands have yet been made by the petitioners on the 1961 reviews. The court does not believe it to be practicable to consolidate these trials where the 1960 review is limited to overvaluation and the 1961 review is concerned with both overvaluation and inequality. The motion to so consolidate is, therefore, denied.